UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AARON GASTON, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:08CV118 CDP |
| | ) |
| TEAMSTERS LOCAL UNION | ) |
| NO. 600, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

Plaintiffs are members of defendant Local Union 600 of the International Brotherhood of Teamsters who worked at Prairie Farms' Pevely Dairy plant in St. Louis before it closed in 2008. They have sued their employer, their union, and the union's business representative, Scott Gilchrist. When the Pevely Dairy plant closed, some Pevely employees were transferred to another dairy plant, also owned by Prairie Farms. Plaintiffs allege that the union defendants violated their fiduciary duties by failing to negotiate for a seniority provision that would have allowed the transferred Pevely employees to merge into the seniority list at the new plant, rather than be placed at the end. They allege that their employer breached the collective bargaining agreement by "breaking" their seniority rights by placing them at the end of the seniority list upon transfer. All defendants have moved for summary judgment. I conclude that the undisputed facts show that the

employer did not violate the contract. Additionally, as a matter of law the union defendants did not breach their duties of fair representation because the dovetailing provision plaintiffs claim should have been sought conflicts with the plain language of the collective bargaining agreement. I will grant all defendants' motions for summary judgment.

**Undisputed Facts**

This case is about the transfer of employees from the Pevely Dairy plant in St. Louis, Missouri to the Mid-States Dairy plant in Hazelwood, Missouri. Both dairy plants were at some time owned by defendant Prairie Farms.[1] Prairie Farms owned and operated the Pevely plant until it closed on October 31, 2008. It purchased the Mid-States plant in June, 2007. Most employees at both plants, including plaintiffs, are represented in labor negotiations by defendant Teamsters Local 600 and Local 600's business agent, defendant Scott Gilchrist.

The terms and conditions of employment at both plants are governed by the same collective bargaining agreement: the Central States Master Dairy Agreement (MDA). The MDA is a multi-employer, multi-union agreement negotiated with

---

[1] In their Fourth Amended and Verified Complaint, plaintiffs name four defendants: 1) Teamsters Local 600, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local 600"); 2) A.B.C. Dairy Company d/b/a Pevely Dairy Company; 3) Prairie Farms, Inc.; and 4) Scott Gilchrist. Prairie Farms, Inc. is the owner of A.B.C. Dairy d/b/a Pevely Dairy Company, and these two defendants have jointly moved for summary judgment. Rather than refer to these two defendants separately as "Pevely Dairy and Prairie Farms," I will refer to them jointly as "Prairie Farms" or as "plaintiffs' employer."

the Central Conference of Teamsters. In addition to the Pevely and Mid-States plants, the MDA governs the terms of employment at approximately fifty other dairy plants in seven Midwest states.

As discussed in more detail later, when Prairie Farms announced that the Pevely plant would be closed, it and Local 600 were in the process of re-negotiating an addendum to the MDA. Plaintiffs wanted that addendum to address the seniority of those Pevely employees who would be transferred to Mid-States. Plaintiffs' claims all rely on a common factual allegation: that language in the Pevely Addendum could have modified the MDA and allowed the Pevely employees to be dovetailed, or merged, into Mid States' seniority list, rather than endtailed, or put at the end of, the list. Three sections of the MDA are relevant to the plaintiffs' arguments: Section 5.3 dealing with seniority, Section 10.4 governing employee transfers upon plant closures, and Section 21.1 on the effect of conflicting local addenda.

Section 5.3 ("Definition of Terms and Other Provisions Relative to Seniority") states, in part:

> (a) A seniority list shall be prepared for each location in accordance with the recognized department or plant. Seniority shall apply only to regular employees and shall be determined by the length of service with the Employer from the date of his last employment. Any dispute with reference to seniority shall be processed through the grievance procedure.
> . . . .

(c) Seniority shall be broken only by discharge, voluntary quitting, or layoff for more than three (3) years.

. . . .

Section 10.4 of the MDA ("Merger of Operations") states:

> When a branch, division, warehouse or other operation is closed or partially closed and the work transferred to another branch, in whole or in part, employees at the closed locations shall have the right to transfer to the location into which the work was transferred, if any work is available. **Employees may exercise their right to transfer in accordance with their seniority, but shall go to the bottom of the seniority list at the new location**. Such employees shall maintain full company seniority for all contract benefits in effect at the new location except job selection and layoff.

(emphasis added).[2]

Section 21.1 of the MDA ("Master Shall Supersede") reads:

> (a) **The provisions of this Master Agreement shall take precedence over any conflicting or inconsistent provision of any Addendum and the parties shall not be bound by any provisions in an Addendum dealing with a subject dealt with in this Master Agreement** except in the instance where an Agreement between a Local Union(s) and an Employer(s) not now parties to this Agreement indicate mutual desire to become parties to this same Agreement while retaining certain seniority provisions which would be in conflict with this provision.
>
> (b) Such parties may retain such conflicting provision on seniority, discharge, or disciplinary provision only to the extent agreed upon provided the conflicting provisions are petitioned to the Joint Area Council for the approval of these conflicting provisions. That

---

[2] As an example of the operation of Section 10.4, this section was applied to the transfer of employees from one of Prairie Farms' dairy plants in Granite City, Missouri to the Pevely plant in 2007. The ten transferred employees from Granite City were added to the end of Pevely's seniority list.

- 4 -

> approval must define the exception allowed as well as the exception duration and/or limitations if any. The Joint Area Committee shall consist of the principle spokesmen for both parties, or their designated successors, for the Union and the Employers in the negotiations which resulted in this Agreement which became effective May 1, 1999.

(emphasis added).

Each plant is also governed by a local addendum to the MDA addressing the terms of employment at that plant. These addenda supplement the MDA at each individual plant, and set forth the local agreements as to wages, hours, and terms of employment. Addenda are negotiated between the employer and the local Teamsters unions. The "Pevely Addendum" is a supplemental agreement between Local 600 and Pevely Dairy, and its terms only govern the Pevely Dairy employees. Similarly, the "Mid-States Addendum" is a supplemental agreement between Local 600 and Mid-States Dairy, and its terms only govern the Mid-States employees. Both the MDA and the local addenda are periodically re-negotiated: the Pevely Addendum was set to expire on July 31, 2007. The MDA was not set to expire until April 30, 2009.

Occasionally the local unions and the individual dairy plants enter into Letters of Understanding in addition to the local addenda. These Letters of Understanding, signed by the union's business representative and the dairy plant manager, also govern specific terms of employment at an individual plant. For example, in November, 2008, Local 600 and Mid-States dairy entered into a

Letter of Understanding outlining a moratorium on job bidding based on the installation of a new cooler.

In June, 2007, Local 600 and Prairie Farms began negotiations for a new Pevely Addendum. Local 600 designated Scott Gilchrist as its lead negotiator. Before becoming Local 600's business representative, a position he has held for thirteen years, Gilchrist was a driver at the Mid-States plant. Gilchrist is Local 600's negotiator with six dairy employers who are parties to the MDA. Gilchrist was the business representative for drivers and production employees at both the Mid-States and Pevely dairy plants. Gilchrist is on the seniority list at Mid-States, but he is classified as being on a leave of absence because of his union duties. It is undisputed that Gilchrist would have moved down the seniority list at Mid-States if the Pevely employees had been merged – or "dovetailed" into that list upon transfer.[3]

Other members of the bargaining committee included plaintiffs Aaron Gaston and Richard Pickering. Some time during negotiations, Prairie Farms' CEO Ed Mullins informed the bargaining committee that Prairie Farms had purchased the Mid-States Dairy plant, and that the Pevely Dairy plant would be closing. Mullins also informed the committee that there might be transfer

---

[3]The parties dispute how much Gilchrist's seniority position would have fallen if the transferred employees had been dovetailed at Mid-States. This dispute, however, is not material to the outcome here.

opportunities to the Mid-States Dairy plant for some Pevely employees, but that those transferred employees would be placed at the end of the seniority list – or "endtailed" – at Mid-States.

After Prairie Farms' announcement, Gaston asked Gilchrist if the transferred employees could be dove tailed into Mid-States' seniority list, and whether dovetailing could be addressed and negotiated into the new Pevely Addendum. The seniority lists at each plant are based on each employee's date of hire at each respective plant. Dovetailing would have combined the seniority lists at the two plants, allowing the Pevely employees to retain their seniority positions relative to Mid-States' employees, rather than being added to the end of Mid-States' seniority list. The parties disagree on how Gilchrist responded to this request.

It is undisputed that Gilchrist told plaintiffs his view that a dovetailing provision could not be successfully negotiated into the addendum. The parties dispute the reason Gilchrist gave them for this opinion: plaintiffs claim that Gilchrist told them that it simply could not be done, and that, as a result, Gilchrist never tried to negotiate for dovetailing. Gilchrist claims that he told plaintiffs that such a provision would be ineffective in light of the language in Section 21.1 of the MDA prohibiting an addendum from conflicting with the MDA, and that Prairie Farms would not agree to dovetailing because it had already announced

that transferred employees would be endtailed.[4] The reasons Gilchrist gave to plaintiffs, while disputed, are not material. Gilchrist did not negotiate a dovetailing provision.

Pevely employees Fran Kimball and Aaron Gaston filed a grievance with Local 600, requesting that the transferred Pevely Dairy employees be dovetailed into the Mid-States seniority list. Pevely employee Richard Hayes also filed a separate grievance, stating that section 10.4 of the MDA did not apply to the transfer of employees from Pevely to Mid-States because the purchase of Mid-States was a buy-out and not a merger. Prairie Farms denied the two grievances. In accordance with the MDA, the employees' grievances were heard at a Joint Area Committee hearing. The JAC is a tribunal consisting of an equal number of representatives from the Teamsters Union and from employers who are signatories to the MDA. After hearings, the JAC ultimately denied both grievances.

In the end, Prairie Farms submitted an offer to the union for an addendum that did not include a dovetailing provision. Local 600 held three ratification meetings before finally accepting the new addendum, without a dovetailing

---

[4]The parties also dispute whether Prairie Farms discussed dovetailing in formal negotiations. In September, 2007 a union representative asked if the company would be opposed to dovetailing, and Ray Silvey, Prairie Farms' lead negotiator, told the union representatives that the company would not agree to dovetailing. While plaintiffs do not deny that this conversation took place, plaintiffs state that this conversation did not occur during a formal bargaining session. This dispute is not material to the outcome here.

provision. The new Pevely Addendum was signed on December 3, 2007. The transferred Pevely employees were endtailed into Mid-States' seniority list.

## Discussion

Plaintiffs' claims against their employer, their union, and the union's business representative are made under three related sections of the Labor Management Relations Act (LMRA) and the Labor Management Reporting and Disclosure Act (LMRDA). Plaintiffs' claim against their Local 600 (Count I) is for violation of the duty of fair representation under the LMRA. 29 U.S.C. § 151 *et seq*. Plaintiffs' claims against Prairie Farms, (Counts II and III) are for breach of the collective bargaining agreement and a declaratory judgment under section 301 of the LMRA. 29 U.S.C. § 185. Plaintiffs' claim against Gilchrist (Count IV) is for breach of fiduciary duty under section 501 of the LMRDA. 29 U.S.C. § 501. Plaintiffs also ask for a temporary restraining order, preliminary injunction, and permanent injunction against all defendants (Count V).

The standards for summary judgment are well settled. In ruling on summary judgment, the Court views the facts and inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but must set forth by affidavit or other evidence specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). At the summary judgment stage, I will not weigh the evidence and decide the truth of the matter, but rather I need only determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

Plaintiffs' claims all depend on proof that changes to the Pevely Addendum could have modified the MDA and allowed the transferred Pevely employees to be dovetailed into Mid-States' seniority list, rather than endtailed. Because the undisputed evidence shows that the MDA could not be modified in the way plaintiffs assert, I will grant defendants' motions for summary judgment.

In Counts II and III, plaintiffs allege that Prairie Farms breached the MDA by breaking their seniority rights under section 5.3(c). Section 5.3(c) of the MDA provides that "[s]eniority shall be broken only by discharge, voluntary quitting, or layoff for more than three (3) years." Plaintiffs claim that, by adding the transferred Pevely employees to the end of Mid-States' seniority list, Prairie Farms broke their seniority in violation of 5.3(c). But this argument ignores section 10.4 of the MDA, which provides for the endtailing of employees upon transfer due to a plant closure. Courts construe collective bargaining agreements,

like any contract, "as a whole." *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 279 (1956). Courts should read the terms of collective bargaining agreements in their context. *Sheet Metal Workers Int'l Ass'n, Local No. 3 v. Lozier Corp.*, 255 F.3d 549, 551 (8th Cir. 2001). Further, courts should "place a practical and realistic construction on labor agreements . . . " *Teamsters Local Union No. 688 v. Crown Cork & Seal Co., Inc.*, 488 F.2d 738, 742 (8th Cir. 1973). Reading Section 5.3(c) in context with Section 10.4, it is undisputed that instead of breaching the MDA, Prairie Farms followed it. I will grant summary judgment on Counts II and III.[5]

In Count I, plaintiffs allege that Local 600 breached its duty of fair representation by refusing to negotiate for a dovetailing provision, by wrongfully advising plaintiffs to file a grievance, and by "distract[ing] and discourag[ing] plaintiffs from seeking enforcement of the seniority rights. The same conduct

---

[5]In their motion for summary judgment, the employer defendants argue that plaintiffs do not have standing to bring the breach of contract claim against them. I agree that the breach of contract claim against these defendants is not a true Section 301 "hybrid" claim that would allow for individual employee suits against their employer. *See, e.g. Trompeter v. Boise Cascade Corp.*, 877 F.2d 686, 687 (8th Cir. 1989)("It is well settled that ordinarily, it is the union's task to seek judicial enforcement of the collectively bargained terms on the employees' behalf."); *Jensen v. AT&T Corp.*, No. 4:06CV842, 2007 WL 2199712, at *3 (E.D. Mo. July 27, 2007)(". . . union employees cannot bring a claim under the LMRA against their employers without also proving that the union breached its duty of fair representation."). I also agree that this claim does not fall under either of the two exceptions to Section 301's rule prohibiting such suits. *See generally Vaca v. Sipes*, 386 U.S. 171 (1967); *Waldron v. Boeing Co.*, 388 F.3d 591 (8th Cir. 2004); *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67 (1989). Plaintiffs are clear that their breach of contract claim (for breaking seniority) is distinct from their fair representation claim (for failing to seek dovetailing through negotiation).

forms the basis of Count IV, in which plaintiffs allege that Gilchrist violated his fiduciary duty to them, as members of the union. Both counts allege that Gilchrist, because of his position as a Mid-States employee and friend of other Mid-States employees, failed to negotiate a dovetailing provision because doing so protected his interests and the interests of other Mid-States employees over the interests of plaintiffs.

A union's duty to fairly represent its members is an implied obligation based on the union's status as sole bargaining agent. "Because a union is given exclusive bargaining rights under a collective bargaining agreement, federal law imposes upon the union the concomitant duty to represent fairly all the workers covered by that collective bargaining agreement." *Sanders v. Youthcraft Coats & Suits, Inc.*, 700 F.2d 1226, 1229 (8th Cir. 1983) (citing *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337 (1953)). In the Eighth Circuit, the duty of fair representation is breached only when the union's conduct is "arbitrary, discriminatory, or in bad faith." *Smith v. United Parcel Serv., Inc.*, 96 F.3d 1066, 1068 (8th Cir. 1996) (citing *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). For a union's conduct to be "arbitrary" it must be "so far outside a 'wide range of reasonableness' as to be irrational." *Washington v. Serv. Employees Int'l Union Local 50*, 130 F.3d 825, 826 (8th Cir. 1997) (citing *Smith*, 96 F.3d at 1068). A

showing of bad faith requires a showing of "fraud, deceitful action, or dishonest conduct." *Id*.

Individual union members are permitted to sue union officials and representatives for violations of section 501(a) of the LMRDA. Section 501(a) states that union representatives, "taking into account the special problems and functions of a labor organization" must "refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization." 29 U.S.C. §501(a). In the Eighth Circuit, section 501 is interpreted to impose fiduciary duties in their broadest application. *Johnson v. Nelson*, 325 F.2d 646, 651 (8th Cir. 1963). Because union officials and representatives occupy positions of trust they must "put their obligations to the union and its members ahead of any personal interest." *Id*. at 650.

In both Count I and Count IV, plaintiffs allege that Gilchrist's failure to negotiate for dovetailing was wrongful because he had a conflict of interest in negotiations. Although a factual dispute exists, it is not material: Gilchrist's motivations and possible conflicts of interest are irrelevant because any attempt to negotiate for dovetailing would have been futile. The plain language of the MDA

would make any dovetailing provision obtained through negotiations in an addendum meaningless.

Section 21.1 of the MDA is clear: provisions in the MDA prevail over conflicting or inconsistent provisions in any local addendum. Where there is a provision in an addendum that deals with a subject dealt with in the MDA "the parties shall not be bound" by the conflicting addendum. Section 21.1 provides an exception for parties who sign on to the agreement. MDA agreement at a later time. Those parties, under 21.1(b), may retain conflicting seniority, discharge, or disciplinary provisions, "provided the conflicting provisions are petitioned to the Joint Area Council for . . . approval." Section 21.1(b) does not apply to the Pevely employees, however, because the Pevely plant was already a party to the MDA.

Under Section 10.4, employees at the closed plants are given the right to transfer to the new plant, provided there is work available. However, those transferred employees "shall go to the bottom of the seniority list at the new location." Section 10.4 of the MDA requires that employees who exercise their right to transfer to a new plant must be endtailed to that plant's seniority list. Any provision in a local addendum that provided for dovetailing of transferred employees would directly conflict with the MDA. Reading Section 10.4 together with Section 21.1, any negotiated dovetailing provision in the Pevely Addendum

would not bind the parties. Rather, even if dovetailing language were negotiated into a local addendum, the superseding endtailing provision would apply. Because the plain language of the MDA requires endtailing for transferred employees, any negotiation for a dovetailing provision in the Pevely Addendum would have been meaningless.

Plaintiffs make three arguments intended to show that defendants could have negotiated for dovetailing. First, plaintiffs argue that Section 10.4 of the MDA should not have applied to the transfer of employees to the Mid-States plant because the purchase of Mid-States was a buy-out, not a merger. Second, plaintiffs argue that the parties that ratified the Pevely Addendum are the same parties that ratified the MDA, and so they could have agreed to change the MDA. Finally, plaintiffs argue that the MDA has been amended before by a Letter of Understanding, and plaintiffs urge that a similar letter could have allowed for dovetailing at the Mid-States plant.

Plaintiffs' argument that Section 10.4 does not apply to the transfer of work from Pevely to Mid-States because Prairie Farms' acquisition of Mid-States was a "buy-out" and not a "merger" is without merit. Section 10.4 has nothing to do with Prairie Farms' purchase of Mid-States, but it directly applies to the transfer of Pevely employees to Mid-States. It applies "[w]hen a branch, division, warehouse or other operation is closed or partially closed and the work [is]

transferred to another branch, in whole or in part . . . ." The Pevely plant was partially, and then completely closed. The work from Pevely was transferred to Mid-States, in part, and then in whole. The fact that Prairie Farms had just purchased Mid-States makes no difference: Section 10.4 applies to the transfer of Pevely employees to Mid-States.

Plaintiffs' argument that the signatories to the MDA are the same as the signatories to the Pevely Addendum is also without merit. While it is true that the parties that signed the Pevely Addendum may also have signed the MDA, the MDA is an agreement governing over fifty dairy plants throughout the Midwest. Representatives from a single dairy plant and a single local union have no power to modify the MDA without the other signatories. Further, any modification to the MDA allowing for dovetailing at the Mid-States plant would need to be negotiated with the Mid-States employees' interests in mind as well. Local 600 represents both Pevely and Mid-States employees: to argue, as plaintiffs do, that the union violated its duty to fairly represent Pevely employees by failing to negotiate for dovetailing at Mid-States ignores the duty owed by the union and Gilchrist to the Mid-States employees as well. The Mid-States employees, whose seniority would be reduced by dovetailing, were not at the bargaining table. The MDA contemplated this situation and the parties to it agreed, in advance, that

endtailing was an acceptable and fair way to address the competing seniority interests of two merging employee groups.

Finally, a Letter of Understanding could not have amended the MDA to allow for dovetailing at the Mid-States plant, for the same reason stated above. The various Letters of Understanding provided as exhibits to the parties' motions do not amend provisions in the MDA. Each letter serves to define specific plant procedures, and all the letters are consistent with the MDA. The Letters of Understanding may provide more detailed terms of employment at a plant, but they do not conflict with the plain terms of the MDA. A Letter of Understanding providing for dovetailing rather than endtailing would directly conflict with Section 10.4 of the MDA, and would thus be ineffective under Section 21.1.

Any provision in the Pevely Addendum providing for dovetailing at the Mid-States plant would have been ineffective. Defendants similarly had no power to modify the MDA by a Letter of Understanding or unilaterally as signatories to the MDA. Because dovetailing, even if negotiated by Local 600 and Gilchrist into the Addendum, would have conflicted with the MDA, any argument that Local 600 and Gilchrist acted improperly or with a conflict of interest must fail. Further, Prairie Farms did not breach the collective bargaining agreement by breaking plaintiffs' seniority. Rather, Prairie Farms followed the

plain language of the MDA. There is no evidence creating a genuine factual dispute, and defendants are entitled to summary judgment on all claims.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motions for summary judgment [#53, #82, #86 and #106] are GRANTED.

**IT IS FURTHER ORDERED** that defendant A.B.C.'s motion for fees [#65] is DENIED.

A separate judgment in accord with this Memorandum and Order is entered this same day.

                                                   _____
                                                   CATHERINE D. PERRY
                                                   UNITED STATES DISTRICT JUDGE

Dated this 23rd day of September, 2009.